140 So. 445

## TURNER v. STATE.
### 7 Div. 756.

Court of Appeals of Alabama.
June 30, 1931.

Rehearing Denied Aug. 4, 1931.

Affirmed on Mandate Jan. 19, 1932.

Rehearing Denied Feb. 9, 1932.

**22**

L. H. Ellis, of Columbiana, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. S. Lawson, Asst. Atty. Gen., for the State.

RICE, J.

Appellant was indicted for murder in the first degree, the indictment charging, in the proper way, the murder of one Sanford Howell Henderson.

Upon his trial, under the above indictment, he was convicted of the offense of murder in the second degree, and his punishment fixed at imprisonment in the penitentiary for the term of fifteen years.

Deceased, who was also known as Boss Henderson, disappeared on the night of November 4, 1928, and his dead body was discovered, late in the following day, a short distance north of Vincent, in Shelby county, about two hundred feet from a seldom used road, with a bullet hole in his head, and also with a bullet hole about the middle of his back. These holes had the appearance of being the result of pistol shot wounds.

On Sunday afternoon or Sunday night, November 4, 1928, said Henderson was drinking and gambling in the woods and fields north of Vincent.

Aside from some slight circumstances, the evidence for the state consisted of that tending to show that Annie Turner, the wife of Clarence Turner, had heard appellant, Cecil Bell, and Clarence Turner plotting or plan-

ning to kill the deceased, and of that consisting of the testimony of one F. S. White, to the effect that he was out on that Sunday night, and saw Boss Henderson, appellant, Clarence Turner, and Cecil Bell sitting around a fire near Clarence Turner's home, and that he saw appellant shoot the deceased.

Appellant's testimony denied that he did the shooting; that he was present when it was done; that he had anything to do with it; that he was with Boss Henderson on the Sunday or Sunday night in question; or that he even saw him, etc., that day or night.

The above, while by no means a complete summary of the evidence, and not intended to even approximate such, will, we think, serve to illustrate what we shall have to say hereinafter.

We ought, we believe, to remark that it was shown by the evidence that Cecil Bell, mentioned hereinabove, was the nephew of Dr. A. W. Bell.

It will be observed that the state's testimony tended directly to show a conspiracy between appellant, Clarence Turner, and Cecil Bell, to bring about the murder of Boss Henderson.

There was also evidence tending to show that one or more of the coconspirators said, shortly after the death of said Henderson, words to the effect that "if I (we) get the one hundred and fifty dollars insurance that is coming to us, I don't give a damn what becomes of us."

We find nothing in the testimony, either on behalf of the state or the appellant, tending, even remotely, to connect Dr. A. W. Bell with the conspiracy to bring about the death of Henderson.

If there was any connection between Cecil Bell, his nephew, and Dr. A. W. Bell, of any sort, other than that of the blood relation mentioned, there is no evidence of that fact.

In this state of the record, we are unable to see the relevancy of the testimony of Judge Wilkinson, to the effect that there were certain insurance policies on the life of Boss Henderson, in which Dr. A. W. Bell was named as beneficiary, etc. 30 C. J. 188, § 415; Barry v. State, 37 Tex. Cr. R. 302, 39 S. W. 692.

We pretermit, as being unnecessary in the view we hold, that such testimony was irrelevant, treatment of the question as to whether or not it was necessary to show the loss, etc., of the policies mentioned, or whether such loss, etc., was sufficiently shown to authorize the introduction of parol testimony as to their contents, etc., as not being in violation of the "best evidence" rule, etc.

As we see it, the bare fact that Cecil Bell, alleged to be the coconspirator of appellant, was the "nephew" of Dr. A. W. Bell, did not warrant the introduction of the testimony under consideration, the only effect of which

could have been to show a motive on the part of Dr. A. W. Bell to desire the death of Boss Henderson. Without something other being shown by the testimony than the mere fact that one whose motive, if he had any, could be charged to appellant, as Cecil Bell in this case was the "nephew" of the man shown to have such "motive," it seems to us not to follow logically, and hence not legally, that evidence of motive on the part of the uncle could be attributed to the "nephew."

We therefore hold that it was error, and manifestly prejudicial, to allow, over appellant's timely objection and exception, the testimony of Judge Wilkinson to the effect we have indicated hereinabove.

There are a few other questions apparent, but they involve rulings of no great difficulty nor importance in the case, and will almost certainly not arise in their present form on another trial.

Inasmuch as the judgment of conviction must be reversed because of the error or errors hereinabove pointed out, we will omit a treatment of the other questions mentioned.

Reversed and remanded.

Opinion After Remandment by Supreme Court.
PER CURIAM.

■ The ruling of the trial court upon which we heretofore predicated a reversal of the judgment of conviction in this case having been held, on petition for certiorari etc., not erroneous by the Supreme Court, and the cause having been remanded to us for further consideration, we will proceed to treat the exceptions not considered upon original submission, which seem to us worthy of mention.

While we have carefully examined the entire record and proceedings, only those matters discussed by appellant's able counsel in his brief filed here, after remandment of the cause, are thought necessary to be treated by us.

■ Appellant complains that the state was allowed, over his objection, with exception duly reserved, to ask its witness Fred S. White, on redirect examination, this question: "Q. Why did you leave that community?" His intention being that the said question called for the witness' uncommunicated and secret motive or intention, etc.

Appellant's counsel confidently asserts that "any school boy ought to know that this question was illegal and its needs neither citation of authority nor argument to demonstrate that the question and answer were illegal." Well, perhaps.

It may be unfortunate that we are not so easily persuaded. But to us it seems that the fact that appellant had, through cross-examination of this state's witness Fred S.

White, "called for statements by witness" as to "why he left that community," it was permissible for the state to show on redirect examination of this witness why he went away; and, permitting the question quoted above, appears, and we hold it was, but following this rule of the law of evidence. Sims v. State, 146 Ala. 109, 41 So. 413.

■ Appellant next contends that there was error to reverse in permitting the state, over his objection, etc., to ask its witness Ruth Allen, on redirect examination, this question: "Q. I will ask you to state whether you told your father about it?"

Ruth Allen was sworn and examined as a witness for the state in rebuttal.

Mrs. Bulah Smith, a defense witness, on cross-examination, denied making certain statements. Ruth Allen was put on the stand by the state, in rebuttal, in an attempt to prove that Mrs. Bulah Smith had made such statements.

Upon cross-examining Ruth Allen, the appellant asked her whom was the first person she had told about the conversation she had with Mrs. Bulah Smith; and, if that morning was not the first time she had told it, etc.

In response to this cross-examination of its witness Ruth Allen, the state was permitted to propound to her the question we have quoted above. In this we think, and hold, there was no error.

It was but permitting the "state on redirect examination may examine [the] witness as to matter injected into [the] case on cross-examination." Jones v. State, 22 Ala. App. 141, 113 So. 478.

What we have said disposes of the only exceptions, or rulings, not obviously free from prejudicial error. So upon what we have here written, and upon authority of the decision of the Supreme Court in the case of Ex parte James Turner v. State, 224 Ala. 5, 140 So. 447, the judgment of conviction is affirmed.

Affirmed.